UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


**WILLIAM HUNTER**                                              **CIVIL ACTION**

**VERSUS**                                                      **NO. 11-1950**

**ROBERT TANNER, WARDEN**                                       **SECTION "A"(5)**


## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. §2254(e)(2). Accordingly, it is hereby recommended that the instant petition be **DENIED WITH PREJUDICE.**

**PROCEDURAL HISTORY**[1]

Petitioner, William Hunter, is a state prisoner currently incarcerated in the Rayburn Correctional Center, Angie, Louisiana. Hunter was charged by bill of information on May 4, 2005, with possession of cocaine, a violation of La. R.S. 40:967(C). Hunter pleaded not guilty at his June 7, 2005 arraignment. The trial court denied Hunter's motion to suppress evidence on April 28, 2006. On December 6, 2006, Hunter was tried in Orleans Parish Criminal District Court by a six-person jury and was found guilty as charged. On June 4, 2007, Hunter was adjudicated a fourth-felony habitual offender and was sentenced to twenty years imprisonment at hard labor.

On February 18, 2009, the Louisiana Fourth Circuit Court of Appeal affirmed Hunter's conviction and sentence. State v. Hunter, 3 So.3d 93 (Table), 2008-KA-0471 (La. App. 4 Cir. 2/18/09). Pursuant to Rule X, Section 5(a) of the Rules of the Louisiana Supreme Court, Hunter had thirty days from February 18, 2009, until March 20, 2009, in which to timely seek writs from the Louisiana Supreme Court.[2] See, e.g., Butler v. Cain, 533 F.3d 314, 317 (5th

---

[1] A portion of the procedural history was taken from the Louisiana Fourth Circuit Court of Appeal's decision, State v. Hunter, 3 So.3d 93 (Table), 2008-KA-0471 (La. App. 4 Cir. 2/18/09). A copy of the Louisiana Fourth Circuit's unpublished opinion is contained in the State rec., vol. 2.

[2] La. Supreme Court Rule X, Section 5(a) provides, in pertinent part:

Cir. 2008). Hunter's writ application, however, was not filed with the Louisiana Supreme Court until March 30, 2009.[3] That application was denied on December 18, 2009. State v. Hunter, 23 So.3d 933, 2009-KO-0797 (La. 2009). Hunter did not file a petition for writ of certiorari to the United States Supreme Court.

On May 6, 2010, Hunter filed an application for post-conviction relief with the state district court. On June 22, 2010, the state district court denied Hunter post-conviction relief. St. rec., vol. 1. Thereafter, Hunter sought relief from the Louisiana

---

> An application seeking to review a judgment of the court of appeal either after an appeal to that court, or after that court has granted relief on an application for supervisory writs ... or after a denial of an application, shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal....

[3] In Causey v. Cain, 450 F.3d 601, 604-605 (5th Cir. 2006), the United States Fifth Circuit determined that the federal "mailbox rule" should be employed when determining the filing date of state court pleadings for purposes of determining the timeliness of a federal habeas petition. Under the "mailbox rule," the date a pro se prisoner's pleading is provided to prison officials for mailing is the date it is considered filed. See Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Generally, a court will look to the date a prisoner signed his pleading as the earliest date the pleading could have been provided to prison officials for mailing. See Colarte v. Leblanc, 40 F.Supp.2d 816, 817 (E.D. La. 1999). Hunter, however, did not date his writ of certiorari to the Louisiana Supreme Court. (St. rec., vol. 2).
   In a letter dated April 7, 2009 the Clerk of Court for the Louisiana Supreme Court advised that Hunter's writ of certiorari was metered or post-marked on "3/30/2009". (St. rec., vol. 2). As there is no signature on Hunter's writ application, the Court will utilize the post-marked or metered date of the pleading as the filing date.

3

Fourth Circuit Court of Appeal. On October 20, 2010, the state appellate court denied Hunter's writ application. State v. Hunter, No. 2010-K-1325 (La. App. 4 Cir. 10/20/10) (unpublished opinion). St. rec., vol. 3. On that same day, Hunter, through counsel, filed another writ application with the Louisiana Fourth Circuit Court of Appeal. St. rec., vol. 3. On December 6, 2010, the state appellate court denied Hunter's writ application as repetitive. State v. Hunter, No. 2010-K-1492 (La. App. 4 Cir. 12/6/10) (unpublished opinion). St. rec., vol. 3. On June 3, 2011, the Louisiana Supreme Court likewise denied Hunter post-conviction relief. State v. Hunter, 63 So.3d 1005, No. 2011-KP-0038 (La. 2011).

On July 24, 2011, Hunter filed the instant federal habeas corpus petition, raising the following claims: 1) his protection against an unreasonable search and seizure was violated; and, 2) there was insufficient evidence to convict him of being a multiple offender and his attorney was ineffective in representing him on this issue.[4]

**TIMELINESS**

Under 28 U.S.C. §2244(d)(1), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L.No. 104-132, 110 Stat. 1214 (1996)(effective April 24, 1996), state

---

[4]Claim 2 represents a consolidation of Hunter's claims 2 and 3.

prisoners like Hunter have one year from the date that their convictions become final to timely seek federal habeas corpus relief.  Section 2244(d)(2) further provides that the time during which a prisoner has a properly filed application for post-conviction relief or other collateral review pending before the state courts is not counted against the one-year limitation period. Although the State has, in this case, asserted that Hunter's habeas application is untimely (rec. doc. 6, p. 4), the one-year time bar may be raised by the Court <u>sua</u> <u>sponte</u>.  <u>Kiser v. Johnson</u>, 163 F.3d 326, 328-29 (5th Cir. 1999).

Hunter's conviction and sentence became final on March 20, 2009, when his time for seeking relief from the state appellate court's February 18, 2009 adverse decision expired.  <u>Butler</u>, 533 F.3d at 316-318.[5]  Under §2244(d), Hunter thus had until March 20, 2010, within which to timely seek federal relief unless the one-year time period was tolled by the pendency of a properly-filed

---

[5] As noted earlier, Hunter's writ application, seeking relief from the state appellate court's February 18, 2009 adverse opinion, was not filed with the Louisiana Supreme Court until March 30, 2009.  While Hunter submitted an earlier writ application to the Louisiana Supreme Court, it was not filed with the state high court because it did not comply with the court's requirements.  Specifically, in a letter dated March 19, 2009, the "Central Staff" of the Louisiana Supreme Court advised that they were returning Hunter's "papers" unfiled.  The letter explained that the court could not evaluate Hunter's claims unless he provided "the required documentation including a copy of **the district court and court of appeal judgments** [emphasis original]". (St. rec., vol. 2).

application for post-conviction relief or other collateral review. Hunter, however, did not file his first application for state post-conviction relief until May 6, 2010. As Hunter had no qualifying proceedings under §2244(d)(2) pending before the state courts in the one-year period following the date that his conviction became final, his petition is time-barred absent a basis for equitable tolling.[6]

Equitable tolling is justified only in "'rare and exceptional circumstances.'" Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164, 121 S.Ct. 1124, 148 L.Ed.2d 991, quoting Davis v. Johnson, 158 F.3d 806 (5th Cir 1998), cert. denied, 526 U.S. 1074, 119 S.Ct. 1474, 143 L.Ed.2d 558 (1999). It "applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), cert. denied, 529 U.S. 1057, 120 S.Ct. 1564, 146 L.Ed.2d 467 (2000), citing Rashidi v. American President Lines, 96 F.3d 124, 128 (5th Cir. 1996). The evidence must show that the applicant, though deterred by matters outside his or her control, was nevertheless diligent in his or her pursuit

---

[6] As the Fifth Circuit explained in Butler, 533 F.3d at 318, the time, March 30, 2009 to December 18, 2009, during which Hunter's late Louisiana Supreme Court writ application, No. 2009-KO-0797, was pending, does not toll prescription as the application was on direct review, rather than post-conviction or other collateral review as required under the tolling provisions of Section 2244(d)(2).

6

of §2254 relief. Coleman, 184 F.3d at 403.

The procedural history, set forth above, reflects that Hunter was diligent in his pursuit of relief. Hunter timely filed his initial writ application with the Louisiana Supreme Court. On March 19, 2009, one day before his thirty-day time limit was set to expire, the Louisiana Supreme Court mailed a letter advising that his pleading was deficient and, therefore, had not been filed. Approximately ten days later, Hunter submitted a conforming writ application which was filed by the state high court. (St. rec., vol. 2). Once his post-conviction proceedings were final, Hunter waited only slightly longer than a month before filing the instant habeas petition.

Hunter's diligence is apparent when compared with the petitioner's action in Caldwell v. Cockrell, 2003 WL 22359442 (N.D. Tex. Aug. 13, 2003). In Caldwell, as in the present case, the petitioner submitted a deficient pleading which the state court did not file. In determining timeliness, the federal district court assumed arguendo that Caldwell was entitled to tolling during a portion of the period from when he was advised of the deficient application until the state court denied his revised application. Caldwell, 2003 WL 22359442 at *3. However, because Caldwell's habeas petition, with tolling, was nevertheless untimely, and because Caldwell had not exemplified due diligence, allowing 360 days of his 365-day statute of limitations to expire before filing

his deficient state pleading, the court determined that his habeas petition was time-barred. Caldwell, 2003 WL 22359442 at *3-4.

Unfortunately, the Caldwell court's finding, that petitioner may be entitled to equitable tolling in connection with his deficient pleading, is dicta and has not been endorsed by the Fifth Circuit.[7] As such, the Court finds the instant action to be untimely. However, in the alternative, the Court finds Hunter's claims to be without merit.[8]

**FACTS**[9]

New Orleans Police Officer Michael Lorio testified at trial that on April 20, 2005, he and Officer Frank Robertson were traveling west on North Robertson Street in a marked police unit when he observed defendant, approximately fifteen feet away, peering into the driver's side window of an unoccupied Ford Crown

---

[7] In its decision affirming the district court's decision in Caldwell, the Fifth Circuit found that the lower court did not abuse its discretion in determining that petitioner was not entitled to equitable tolling. Caldwell v. Dretke, 182 Fed. Appx. 346, 347 (5th Cir. 2006) (per curiam).

[8] The State, in its response (rec. doc. 5, p. 5), also contends that Hunter has failed to exhaust his state court remedies. However, the Court chooses to invoke the provisions of 28 U.S.C. §2254(b)(2) which provide: "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."

[9] The facts have been taken from the Louisiana Fourth Circuit's opinion, State v. Hunter, 3 So.3d 93 (Table), 2008-KA-0471 (La. App. 4 Cir. 2/18/09).

Victoria. Officer Lorio was in the front passenger seat. Defendant began walking away when he observed the officers. Officer Lorio said he and his partner decided to conduct a pedestrian check of defendant. The officers exited and called defendant over to their vehicle. As defendant walked toward the officers, Officer Lorio observed him drop two bags of a white powdered substance the officer believed to be cocaine, and a bag of what he believed to be marijuana. Officer Lorio said defendant was approximately seven feet away from him when defendant dropped the contraband and, although the area was dark, there were streetlights. Officer Lorio said he advised other officers of what he had just witnessed, and defendant was placed in handcuffs. Officer Lorio said defendant was "Mirandized" and, in response to questioning, said the vehicle did not belong to him. Defendant denied having been looking into the vehicle. Officer Lorio testified that there did not appear to be any damage to the vehicle.

Officer Lorio testified on cross examination that he felt defendant was acting suspiciously because defendant was peering into the car and, upon observing the officers, began walking away in the opposite direction. He thought defendant was breaking into the vehicle. Officer Lorio replied in the negative when asked whether there was any other debris in the area when he went to retrieve the narcotics defendant had discarded. Officer Lorio was

shown the narcotics discarded by defendant, and he stated that the item number on the evidence tag was the same item number on a crime lab report with a police report attached.

New Orleans Police Officer Frank Robertson replied in the affirmative when asked whether he was working for the New Orleans Police Department on April 20, 2005, at approximately 10:30 p.m. and whether he assisted in the arrest of defendant at that time. Officer Robertson, who said he was with Officer Lorio and an Officer Torres, testified that Officer Lorio saw defendant first, but that he too observed defendant peering into the vehicle. He said they stopped to ascertain if defendant owned the vehicle. Officer Robertson saw defendant release his clenched hand after Officer Lorio called him over, but could not tell what defendant dropped. He was approximately seven to eight feet away from defendant at that point. He recalled it as being dark, but said the area was well-lit by streetlights. Officer Robertson advised defendant of his Miranda rights. Officer Robertson identified the contraband by his initials on the seal and his name on the front of the evidence packet.

New Orleans Police Department Criminalist John Palm was qualified by stipulation as an expert in the examination and identification of marijuana and cocaine. Officer Palm testified that he tested the white powder in each of two bags and the greenish vegetable matter in one bag, and that the substances

10

tested positive for cocaine and marijuana, respectively.  Officer Palm testified as to the chain of custody of the contraband.

**STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. §2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact.  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under §2254(d)(1) and questions of fact are reviewed under §2254(d)(2).  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. §2254(d)(1).  The United States Supreme Court has noted:

> §2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it

11

>     to the facts of the particular case. The focus of the
>     latter inquiry is on whether the state court's
>     application of clearly established federal law is
>     objectively unreasonable, and we stressed in Williams[ v.
>     Taylor, 529 U.S. 362 (2000)] that an unreasonable
>     application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. §2254(e)(1).

**ANALYSIS**

**Unreasonable Search and Seizure**

Hunter argues his Fourth Amendment rights were violated because authorities lacked probable cause to either detain or arrest him and, therefore, all subsequent evidence obtained pursuant to the unlawful stop and arrest should have been suppressed. Rec. doc. 1, p. 6.

Pursuant to the Supreme Court's decision in Stone v. Powell, 428 U.S. 465 (1976), Hunter's claim in this regard is not amenable to collateral review. In Stone, the United States Supreme Court concluded:

>     [W]here the State has provided an opportunity
>     for full and fair litigation of a Fourth
>     Amendment claim, the Constitution does not
>     require that a state prisoner be granted

> federal habeas corpus relief on the ground
> that evidence obtained in an unconstitutional
> search or seizure was introduced at his trial.

Id. at 481-482 (footnote omitted); see also Hamner v. Washington, 65 F.3d 170, 1995 WL 508085, *4 (7th Cir. 1995).

A review of the pertinent record reflects that Hunter had a full and fair opportunity to present his Fourth Amendment claim to the state courts. The record reflects that a motion to suppress was filed and an evidentiary hearing was held on the matter on April 28, 2006. St. rec., vol. 2. On appeal, the Louisiana Fourth Circuit addressed Hunter's Fourth Amendment concerns logically and in depth, rejecting the claim and affirming his conviction. State v. Hunter, No. 2008-KA-0471, pp. 7-12. Lastly, the Louisiana Supreme Court addressed petitioner's argument, albeit by rejecting same, in denying his writ. State v. Hunter, 23 So.3d 933.

In short, Hunter's Fourth Amendment claim is not properly before the Court because the requirements set forth in Stone have been met through state court proceedings.

**Insufficient Evidence/Ineffective Assistance of Counsel**

Hunter argues that there was insufficient evidence to support his fourth-felony offender status because the State failed to prove that he was one and the same person in connection with at least two of the prior convictions. Further, Hunter argues that both trial and appellate counsel were ineffective due to their failure to challenge his adjudication as a fourth-felony offender.

13

To support an insufficiency of evidence claim, in the context of a multiple offender adjudication, a petitioner must show that after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could not find beyond a reasonable doubt that petitioner was a multiple offender. Woods v. Bronnenberg, 921 F.2d 278 (Table), 1990 WL 223027, at *1 (7th Cir. 1990), citing Jackson v. Virginia, 443 U.S. 307, 319 (1979).

To prove ineffectiveness on the part of trial and/or appellate counsel, a petitioner must satisfy the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). See Busby v. Dretke, 359 F.3d 708, 714 (5th Cir.), cert. denied, 541 U.S. 1087, 124 S.Ct. 2812, 159 L.Ed.2d 249 (2004) (citations omitted) ("The familiar Strickland framework applies to a prisoner's claim that his appellate counsel was ineffective for failing to raise a certain issue on appeal."). Under Strickland, a petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. If a court finds that petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong.

Under the deficient performance prong of the Strickland test, "it is necessary to 'judge...counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993), citing

14

Strickland, 466 U.S. at 690. To prove prejudice under the Strickland standard, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

In support of the instant claim, Hunter provides:

> In order to prove a defendant to be a habitual offender, the State must establish, by competent evidence, that there are prior felony convictions, and that a defendant is the same person who was convicted of those prior felonies. The State may establish this by various means, such as ... expert testimony matching fingerprints of an accused with those in the record of prior proceedings.

Rec. doc. 1, p. 15 (citations omitted).[10]

A review of Hunter's multiple offender hearing reflects that the State, in fact, satisfied its burden of proof. The State offered the testimony of Officer George Jackson, certified to be "an expert in the lifting, the taking, the comparison, and the ultimate identification of fingerprints." (St. rec., vol.2, p.184). Jackson compared Hunter's fingerprints (exhibit 1) taken immediately before the multiple offender hearing, with fingerprints (exhibit 2) associated with a June 25, 2003 conviction for possession of cocaine and determined that the fingerprints came

---

[10]Hunter suggests that in order to satisfy the State's burden of proof, the fingerprints from prior convictions must be attained from "prior arrest records". Id. However, the cases cited by Hunter do not support his claim in this regard nor is the Court aware of any supporting case law.

15

from one and the same person, Mr. William D. Hunter. (St. rec., vol. 2, pp. 186-187).[11]

Next, Jackson compared the fingerprints of exhibit 1 with the fingerprints (exhibits 4 and 5) associated with a June 16, 1994 conviction for distribution of crack cocaine. (St. rec., vol. 2, pp. 187-188). Jackson concluded that the fingerprints came from one and the same person, William Hunter. (St. rec., vol. 2, pp. 187-188).

Finally, Jackson compared Hunter's fingerprints reflected in exhibit 1 with fingerprints (exhibits 6 and 7) associated with an August 12, 1993 conviction for the intentional or criminally negligent discharge of a firearm. (St. rec., vol. 2, pp. 190-193).[12] Jackson, once again, concluded that all of the fingerprints belonged to William Hunter.[13]

---

[11]The State, at the multiple offender hearing, produced further documentation (exhibit 3) associated with the June 25, 2003 conviction. However, this documentation contained no fingerprints which could be compared with Hunter's fingerprints presented in exhibit 1. (St. rec., vol. 2, p. 186).

[12]The State also produced further documentation (exhibit 8) associated with the August 12, 1993 conviction. However, this documentation contained no fingerprints of Hunter which could be compared with his fingerprints reflected in exhibit 1. (St. rec., vol. 2, p. 191).

[13]The multiple hearing transcript appears to reflect that Officer Jackson, while comparing exhibits 6 and 7 to exhibit 1, mistakenly referred to exhibit 5. (St. rec., vol. 2, p. 191). However, the transcript clearly reflects that the prosecution had provided Jackson with exhibits 6 and 7. (St.

Based upon the above, the trial court found "that the defendant has been established to be one and the same gentleman who has...three prior convictions...." (St. rec., vol. 2, p. 200). Those three convictions, along with his December 6, 2006 possession of cocaine conviction which is the subject matter of the instant action, shows that Hunter was properly adjudicated to be a fourth-felony offender. Accordingly, the Court finds that the evidence was not insufficient to support the trial court's finding that Hunter was a fourth felony offender. Further, counsel were not deficient due to their failure to challenge Hunter's fourth-felony offender status and Hunter was not prejudiced by their failure to do so.

Hunter next argues that trial counsel was ineffective due to her failure to take advantage of alleged inconsistencies in the arresting officers' testimony. Hunter points to Officer Lorio's testimony, on direct examination, that he was approximately seven feet away from Hunter when he saw Hunter drop the bags containing drugs. Rec. doc. 1, p. 20. Hunter compares this testimony with Lorio's testimony, on cross-examination, that his vehicle was approximately fifteen feet away from the vehicle Hunter was peering into when the officers arrived on the scene. Rec. doc. 1, p. 20. However, Lorio, later during his cross-examination, explained this apparent discrepancy. He stated that the vehicle Hunter was

---

rec., vol. 2, p. 190).

17

peering into was facing the same direction as Lorio's police car. When they first arrived on the scene, Hunter was on the driver's side of the vehicle. However, later, Hunter started walking toward them and, when he saw Hunter discard the evidence, Hunter was near the trunk of the vehicle, much closer than the initial fifteen feet. Rec. doc. 1, pp. 21-22.

Hunter also points to Officer Lorio's testimony to the effect that Hunter drop the drug bags "from his left hand" while Officer Robinson testified that he thought Hunter used his right hand to drop the bags. Rec. doc. 1, p. 23. Further, Officer Lorio described the drugs in the bags as powdered cocaine, while Office Robertson described the evidence as crack cocaine. Rec. doc. 1, pp. 23-24.

Counsel's alleged deficiency in failing to "flesh out" the alleged inconsistencies in the officers' testimony constitutes ineffectiveness only if Hunter was prejudiced by the deficiency. Whether Hunter dropped the bags from his left or right hand is inconsequential. Likewise, the fact that the officers' testimony differed slightly regarding the substance contained in the bags is inconsequential. The substance was later tested and proven to be cocaine. Thus, the Court finds that Hunter was not prejudiced by counsel's alleged deficiency. Accordingly;

## RECOMMENDATION

It is hereby **RECOMMENDED** that the petition of William Hunter

for habeas corpus relief be **DENIED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. §636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996)(en banc).[14]

New Orleans, Louisiana, this  9th  day of  February , 2012.

                                                ALMA L. CHASEZ
                                  UNITED STATES MAGISTRATE JUDGE

---

[14] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to fourteen days.